IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LINDA BERNARD,

        Plaintiff,

and

BLUE CROSS BLUE SHIELD OF MICHIGAN,

        Involuntary Plaintiff,

  v.

WOODSIDE RANCH, LLC and
PHILADELPHIA INDEMNITY INSURANCE COMPANY,

        Defendants.

OPINION AND ORDER

16-cv-461-slc

---

Plaintiff Linda Bernard was injured when she fell trying to get on a horse provided by defendant Woodside Ranch, LLC, which is insured by defendant Philadelphia Indemnity Insurance Company. Bernard has brought claims under Wisconsin negligence law and the state safe place statute, Wis. Stat. § 101.11, alleging that Woodside employees provided her with a faulty saddle that slipped and caused her to fall and injure herself.

Defendants have moved for summary judgment. *See* dkt. 20. They argue that Woodside cannot be held liable under Wisconsin's equine immunity statute, Wis. Stat. § 895.481, and that the safe place statute does not apply in this case. In response, Bernard has withdrawn her claims under the safe place statute, *see* dkt. 29 at 12, but she argues that two different exceptions in the equine immunity statute apply to defendants' conduct in this case: (1) knowingly providing faulty equipment that caused her injury; and (2) acting with a willful or wanton disregard for her safety.

For the reasons explained below, I conclude that there is a genuine issue of material fact with respect to whether defendants' conduct falls within the two exceptions to the immunity

statute and am denying defendants' motion for summary judgment with respect to those issues. I am granting defendants' motion for summary judgment with respect to (1) whether Woodside qualifies as an equine activity sponsor that may fall within the scope of the immunity statute; and (2) Bernard's safe place statutory claims, which will be dismissed.

The following facts are undisputed except where noted:

UNDISPUTED FACTS

Plaintiff Linda Bernard is a resident of Michigan, and involuntary plaintiff Blue Cross Blue Shield of Michigan, is a Michigan corporation. Defendant Woodside Ranch, LLC has a principal office in Northridge, California. Woodside Ranch provides facilities and horses for trail rides, horse-drawn wagon rides, and riding lessons, and equips the horses for riding. Woodside Ranch employs wranglers, who perform the equine aspects of the ranch's business. Defendant Philadelphia Indemnity Insurance Company is a Pennsylvania Corporation that provided liability insurance coverage to Woodside Ranch and its agents and employees.

On June 10, 2013, Bernard was a guest at the Woodside Ranch in Mauston, Wisconsin as part of an event for her professional association. Bernard's group had scheduled a horseback breakfast ride for that morning. It was the practice of the Woodside Ranch wranglers to talk with riders at the start of a ride to determine their knowledge, experience, and comfort level with horses. Prior to the ride, Brian Sletten, Woodside Ranch's wrangler manager, asked Bernard about her riding experience and she told him that she had ridden before. Bernard ended up riding Okie, a horse appropriate for any type of rider. One of Woodside Ranch's wranglers cinched Okie's saddle in preparation for Bernard to ride.

Bernard avers that Okie's saddle looked old and in disrepair, with worn down leather in the area of the saddle horn. When she mounted the horse for the first time, Bernard noticed that the saddle did not feel right and informed a young female Woodside Ranch wrangler of the potential problem. The wrangler attempted to inspect or adjust the saddle. [Bernard avers that this wrangler seemed inexperienced and unsure, while defendants aver that Woodside Ranch selects as its wranglers people with a background in equine activity who grew up with horses.] As Bernard rode at the back of her group to the breakfast site, she told the same wrangler that something still was wrong with Okie's saddle and that it did not feel stable. The wrangler responded that the saddle was fine. When Bernard persisted in complaining that something was wrong with the saddle, the wrangler again responded "it is fine."

Bernard reached the clearing for breakfast and dismounted from Okie. She again told the wrangler that something was wrong with the saddle, that it might be broken and asked her to check it again. After breakfast, Bernard asked the wrangler if she had fixed the saddle, to which the wrangler responded that it was "fine." To remount, Bernard stood on a wooden step called a mounting block on Okie's left side. While trying to remount Okie, Bernard the horse's saddle came off and Bernard fell to the ground, injuring her leg. [The parties seem to dispute whether Bernard pulled the saddle to the left in her attempt to mount the horse.] While lying on the ground after she fell, Bernard saw the cinch used to tighten Okie's saddle, and she believed that it looked worn or threadbare.

Sletten has been a wrangler at Woodside Ranch for 27 years, 15 of those years as the wrangler manager. According to Sletten, Woodside Ranch had never used broken tack on a horse. The more experienced wranglers are the ones who secure the saddles to the horses.

3

Wranglers inspect saddles and the parts that secure them to the horse for defects that might make them unsafe for use. If someone finds a problem, then Sletten would remove that saddle from use and replace any defective or broken parts. According to Sletten, a saddle capable of being pulled to the left has something wrong with it.

A saddle is secured to a horse by running a nylon cinch under the horse and attaching it to the saddle's latigo and off billet.[1] If either the latigo or the off billet on a saddle were to have a defect or were to break, then the saddle could become loose. Saddle parts, particularly those made from leather (like latigos and off billets) can break down or become cut or damaged through use.

Woodside Ranch does not have any documents regarding whether any parts of Oakie's saddle were changed or altered in any way since the June 10, 2013 incident.

ANALYSIS

A district court must grant summary judgment when no genuine issue of a material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court must view the evidence in the light most favorable to the nonmoving party, but "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

---

[1] A latigo and an off billet are the same type of strap but the latigo is on the left side (near side) of the saddle, while the off billet is on the right side (off side) of the saddle.

Defendants contend that Wisconsin's equine immunity statute, Wis. Stat. § 895.481, shields Woodside Ranch and its employees for their acts and omissions related to equine activities. The statute extends broad immunity to those who sponsor or provide horse-back riding and other equine activities:

> Except as provided in subs. (3) and (6), a person, including an equine activity sponsor or an equine professional, is immune from civil liability for acts or omissions related to his or her participation in equine activities if a person participating in the equine activity is injured or killed as the result of an inherent risk of equine activities.

Wis. Stat. § 895.481(2).

Defendants have the burden of proving that immunity attaches and must present evidence that would sustain their burden at trial, *Rintelman v. Boys & Girls Clubs of Greater Milwaukee, Inc.*, 2005 WI App 246, ¶¶ 17, 18, 288 Wis. 2d 394, 707 N.W.2d 897.

Subsections (3) and (6) provide a number of exceptions to the general rule of immunity under the statute. Bernard has the burden of proving that her claims fall within one of the exceptions to the statute. *Acuity Mutual Insurance Co. v. Olivas*, 2007 WI 12, ¶ 44, 298 Wis. 2d 640, 726 N.W.2d 258. In addition, Bernard's claims against Philadelphia Indemnity exist only to the extent that they exist against Woodside Ranch. *Parsons ex rel. Cabaniss v. American Family Insurance Co.*, 2007 WI App 211, ¶11, 305 Wis. 2d 630, 740 N.W.2d 399 (citation omitted) (explaining that "the right of action against the insurer exists only to the extent it exists against the insured").

Bernard does not dispute defendants' contention that Woodside Ranch falls within the general scope of the equine activity immunity statute, nor does she dispute these supporting contentions: (1) Woodside Ranch is an "equine activity sponsor;" (2) Bernard and Woodside

5

Ranch were participating in "equine activities;" (3) defendants' alleged acts and omissions "related to" their participation in "equine activities;" and (3) Bernard was injured as a result of the "inherent risk of equine activities." *See* §§ 895.481(1)(b), (c), and (e) (defining statutory terms). Because Bernard had the opportunity to respond to these arguments but chose not to, defendants are correct that she has forfeited these issues and waived the right to raise them in the future. *United States v. Jacques*, 345 F.3d 960, 962 (7th Cir. 2003) (forfeiture is failure to make timely assertion of right); *Nichols v. National Union Fire Insurance Co. of Pittsburgh, PA*, 509 F. Supp. 2d 752, 760 (W.D. Wis. 2007) (plaintiffs forfeited arguments by failing to respond in meaningful way).

Bernard limits her opposition to summary judgment on her contention that these two exceptions to the immunity statute apply in this case:

> The immunity under sub. (2) does not apply if the person seeking immunity does any of the following:
>
>> (a) Provides equipment or tack that he or she knew or should have known was faulty and the faulty equipment or tack causes the injury or death.
>
> \* \* \*
>
>> (d) Acts in a willful or wanton disregard for the safety of the person.

§§ 895.481(3)(a) and (d).

Defendants also argue that none of the other exceptions in §§ 895.481(3) or (6) apply here; Bernard did not respond to those arguments, so she also has forfeited her right to raise these exceptions in the future. True, Bernard states in a footnote that "[b]ased on the facts presented, a jury could also reasonably conclude the Woodside employee acted intentionally–thus applying exception (e)–if she knew the saddle was faulty and chose to take

6

no further action." Dkt. 29 at 11 n. 2. However, a single conclusory statement noting the possible applicability of another statutory exception is not enough to keep this exception in play in the face of defendants' summary judgment motion on this issue. *Parker v. Franklin Cty. Cmty. Sch. Corp.*, 667 F.3d 910, 924 (7th Cir. 2012) (undeveloped argument raised in footnote was waived).

I will address the exceptions related to faulty equipment and willful or wanton disregard separately:

## I. Faulty Equipment Exception

The parties agree that to prove this exception applies, Bernard must show that the saddle was in fact faulty, that Woodside Ranch employees knew or should have known about the faulty condition of the equipment, and that the faulty equipment caused her injury. Bernard testified that she repeatedly reported a problem with her saddle to a female wrangler, the wrangler kept telling Bernard that the saddle was fine, the saddle moved when Bernard attempted to remount Okie after breakfast, Bernard fell to the ground and suffered injury because the saddle moved; and while on the ground, she saw that the cinch looked worn or threadbare. Also Sletten admitted that something is wrong with a saddle that can be moved to the left, and that saddle parts can become worn or break and permit the saddle to become loose.

In support of its motion for summary judgment with respect to this exception, defendants assert that guest safety was the utmost concern of Woodside Ranch, that its wranglers regularly inspected and cared for the riding equipment, and that its wranglers would not allow a guest to use equipment that required repair or replacement. Woodside Ranch has its more experienced

7

wranglers secure the saddles to the horses. But at the summary judgment stage, none of these assertions, singly or together establishes as a matter of law that Bernard's version of events did not take place or could not have taken place. Apart from Sletten's statements about precautions generally used at the ranch, defendants have not adduced any evidence from the wrangler who worked with Bernard or from any witnesses to Bernard's accident. Even if other witnesses were to have provided different accounts of what they saw and heard that morning, this only would have teed up a dispute of material facts. At the summary judgment stage, this court is required to construe all facts and draw all reasonable inferences in favor of the non-moving party–here, Bernard. *Haley v. Kolbe & Kolbe Millwork Co.*, ___ F.3d ___, 2017 WL 3392381 at *2 (7th Cir. Aug. 8, 2017).

So, it doesn't advance the Rule 56 analysis for defendants to dispute or discount Bernard's proposed findings by noting that her account is "not supported by any other evidence in the record." *See, e.g.*, dkt. 36 at 3-4. Even if this court were to consider only the undisputed facts, a reasonable jury could find that tack on Okie's saddle was faulty, that a Woodside Ranch wrangler knew–or should have known from Bernard's complaints–that something was wrong with the saddle before Bernard's accident, and that these problems with the saddle caused it to loosen, which in turn caused Bernard to fall and injure her leg. It will be up to the jury to decide at trial whether Bernard's testimony is credible and to weigh it against Sletten's testimony concerning the ranch's usual practices with respect to equipment care and maintenance. Accordingly, defendants' motion for summary judgment will be denied with respect to whether the faulty equipment exception applies in this case.

## II. Wanton or Willful Disregard Exception

Wisconsin courts have not yet determined what constitutes "wanton or willful disregard" for safety within the context of equine activity, but as both parties point out, many states have equine activity immunity statutes with a similar, if not identical, exception. *See e.g.*, *Teles v. Big Rock Stables, L.P.*, 419 F. Supp. 2d 1003, 1007 (E.D. Tenn. 2006); *Holcomb v. Long*, 765 S.E.2d 687, 692 (Ga. Ct. App. 2014); *Lessman v. Rhodes*, 721 N.E.2d 178, 180 (Ill. App. 3d. 1999); *Gautreau v. Washington*, 672 So. 2d 262, 266 (La. App. 1 Cir. 1996). Defendants advocate for the more restrictive definition adopted by a Georgia state court of appeals:

> Wilful [misconduct] is based on an actual intention to do harm or inflict injury; wanton conduct is that which is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent. Wilful misconduct, or wilful failure or refusal to perform a duty required by statute, is more than negligence or even gross negligence; it involves conduct of a criminal or quasi-criminal nature, the intentional doing of something, either with the knowledge that it is likely to result in serious injury, or with the wanton and reckless disregard of its probable consequences.

*Holcomb*, 765 S.E.2d at 692 (citation omitted). However, as Bernard argues, Wisconsin provides a separate exception for "intentionally caus[ing] the injury or death," Wis. Stat. § 895.481(3)(e). This shows that Wisconsin lawmakers intended that "wanton or willful" conduct be something other than intentional conduct. *See Martine v. Williams*, 2011 WI App 68 ¶¶ 19-20, 333 Wis.2d 203, 212, 799 Wis.2d 449, 453-54 (A court should "construe statutory language in the context within which it is used, not in isolation but as part of a whole."). *See also Cook v. Indust. Comm.*, 31 Wis. 2d 232, 240, 142 Wis.2d 827, 831 (1966) ("[S]tatutes should be so construed that no word or clause shall be rendered surplusage.").

For her part, Bernard cites a definition of willful or wanton applied by Illinois and Tennessee courts that is more akin to recklessness. *Lessman*, 721 N.E.2d at 180 ("behavior which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others" and a "hybrid between acts considered negligent and behavior found to be intentionally tortious"); *Teles*, 419 F. Supp. 2d at 1009 (equating "wanton and willful" with gross negligence, which is "a negligent act done with utter unconcern for the safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law"). The Louisiana court of appeals reached a similar conclusion about the meaning of "wanton," finding that "[t]he usual meaning . . . is that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Gautreau*, 672 So. 2d at 266 (quoting *Landry v. Uniroyal Chem. Co.*, 653 So. 2d 1199, 1205 (La. App. 1 Cir. 1995)).

Given that the Wisconsin statute distinguishes between intentional and wanton or willful conduct, I conclude that its use of "wanton or willful disregard" is consistent with a conscious disregard or indifference. The Wisconsin Supreme Court has made a similar distinction between "malicious" and "willful" in the context of a recreational use statute, Wis. Stat. § 895.52, finding that "malicious conduct is conduct which goes beyond willful conduct or reckless disregard for the youths' safety." *Ervin v. City of Kenosha*, 159 Wis. 2d 464, 484, 464 N.W.2d 654, 663 (1991). Although more information may be required from the parties at the jury instruction phase of this lawsuit concerning the precise definition of the term "wonton or willful," I find that a reasonable jury could conclude from the undisputed facts that the wrangler's inaction in the

face of Bernard's repeated reports of a problem with her saddle exceeds the "inherent risk" of horse riding that is anticipated by the immunity statute and rises to the level of "wanton or willful disregard" for Bernard's safety. *See Teles*, 419 F. Supp. 2d at 1007 (defendant choosing to provide a saddle with stirrups it knew were too short, making it difficult for the rider to balance, could constitute conduct meeting the "willful or wanton" exception).

As a final matter, I note that defendants proposed supplemental findings of fact in conjunction with their reply brief in an attempt to show that Bernard admitted that the female wrangler took steps to adjust Okie's saddle in response to her complaints. I have not considered these additional facts or defendants' arguments related to them because defendants raised this issue for the first time in their reply brief, depriving Bernard of the opportunity to respond. *United States v. King-Vassel*, 728 F.3d 707, 716 (7th Cir. 2013) ("As a general matter, if the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision."). In any event, whether any actions that the wrangler might have taken to address Bernard's concerns prove that the ranch had an appropriate regard for Bernard's safety also will be a question for the jury. Accordingly, defendants' motion for summary judgment will be denied with respect to the application of the exception for wanton or willful conduct.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Woodside Ranch, LLC and Philadelphia Indemnity Insurance Company is GRANTED in part and DENIED in part:

1. Defendants' motion is GRANTED with respect to plaintiff Linda Bernard's claim that defendants violated Wisconsin's safe place statute, Wis. Stat. § 101.11, and those claims will be DISMISSED.

2. Defendants' motion is DENIED with respect to plaintiff's claims that the following two exceptions to the equine immunity statute apply to defendants' conduct in this case: (a) knowingly providing faulty equipment that caused plaintiff's injuries; and (b) acting with a willful or wanton disregard for plaintiff's safety.

Entered this 15th day of August, 2017.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge